**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |
|---|---|
| KUMAR ANNAMRAJU and ANANTHA LLC, <br><br>      Plaintiffs, <br><br> v. <br><br> VENKATESAN DHARMARAJAN, an individual, SENTHILVEL KUMAR VENKATESAN, an individual, DANDAPANI LLC, a Texas limited liability company, MARUTHAM SQUARE, LLC, a Florida limited liability company, and KURINJI SQUARE, LLC, a Florida limited liability company, <br><br>      Defendants. | Case No. 8:25-cv-03449 |

## COMPLAINT

COMES NOW, Plaintiff, KUMAR ANNAMRAJU and ANANTHA LLC (collectively, "**Plaintiffs**") by and through undersigned counsels, and sues Defendants Venkatesan Dharmarajan, Senthilvel Kumar Venkatesan, and Marutham Square LLC, Dandapani LLC (collectively, "**Defendants**") and Kurinji Square LLC (as "**Relief Defendant**"), and alleges as follows:

## I.    INTRODUCTION

1.    This is an action for securities fraud, common law fraud, civil theft, and breach of contract arising from Defendants' scheme to defraud Plaintiffs of $350,000 through false promises regarding real estate investments.

2.      From approximately December 2023 through August 2024 (the "**Relevant Period**"), Defendants Venkatesan Dharmarajan ("**Venkatesan**") and Senthilvel Kumar Venkatesan ("**Senthilvel**"), acting individually and in their capacities as co-founders and managing members of Defendants Marutham Square LLC ("**Marutham**") and Dandapani LLC ("**Dandapani**"), solicited $350,000 from Plaintiffs through the fraudulent offer and sale of securities issued by Marutham and Dandapani. Venkatesan and Senthilvel represented that the entities' business involved purchasing distressed real estate and converting those properties into income-producing investments.

3.      During the Relevant Period, Defendants Marutham and Dandapani, acting through Venkatesan and Senthilvel, sold Plaintiffs securities in the form of investment contracts and unsecured capital contribution agreements that promised 4–5% monthly yields and profit participation upon disposition of the underlying properties. These investments constitute "securities" under federal and state law because Plaintiffs invested money in a common enterprise with the expectation of profits derived solely from the efforts of Defendants, who maintained exclusive control over all investment decisions, property management, and disposition.

4.      In connection with these offerings, Venkatesan and Senthilvel personally made material misrepresentations regarding the intended use of Plaintiffs' funds and falsely assured Plaintiffs that returns were guaranteed and that Plaintiffs would receive a return of capital after a brief holding period.

5.     Defendants Marutham and Dandapani, under the direction and control of Venkatesan and Senthilvel, failed to make the monthly payments promised under the agreements, instead issuing late and sporadic payments. After approximately eleven months, Plaintiffs demanded the return of their capital, but all Defendants refused, with Venkatesan and Senthilvel explicitly communicating that no funds would be returned.

6.     Defendants Venkatesan and Senthilvel individually, and acting as managers of Marutham and Dandapani, misappropriated a portion of Plaintiffs' investment funds by diverting those monies for their personal benefit, including investments in Relief Defendant Kurinji Square LLC, an entity used to acquire real estate unrelated to the Plaintiffs' investment. Marutham and Dandapani, through their principals, knowingly facilitated and permitted this diversion of Plaintiffs' funds.

7.     Plaintiffs bring this action against all Defendants—Venkatesan, Senthilvel, Marutham Square LLC, Dandapani LLC, and Kurinji Square LLC—for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and the Florida Securities and Investor Protection Act, Fla. Stat. § 517.301, common-law fraud, and breach of contract arising from Defendants' fraudulent scheme to induce Plaintiffs to invest $350,000 through material misrepresentations and omissions regarding a purported real estate investment opportunity.  Plaintiffs additionally name Kurinji Square LLC as a Relief Defendant to recover assets traceable to Plaintiffs' misappropriated funds.

8.     Plaintiffs seek rescission or compensatory damages, prejudgment interest, attorneys' fees where authorized, and all further relief the Court deems just and proper.

## II.    PARTIES AND JURISDICTION

9.     Plaintiff KUMAR ANNAMRAJU ("Kumar") is a natural person domiciled in the State of Florida.

10.     Plaintiff ANANTHA LLC ("Anantha") is a Florida limited liability company in good standing, organized in December 2023, with its principal place of business in Florida. Anantha is owned and controlled by Kumar and was formed to hold Kumar's investment interest in Marutham Square LLC.

11.     Defendant VENKATESAN DHARMARAJAN ("Venkatesan") is a natural person domiciled in the State of Texas, doing business in both Florida and Texas. At all relevant times, Venkatesan acted as the principal, organizer, and managing member of Marutham Square LLC and Dandapani LLC and is directly responsible for the acts and omissions alleged herein.

12.     Defendant SENTHILVEL KUMAR VENKATESAN ("**Senthilvel**") is a natural person domiciled in the State of Florida. Senthilvel is the co-founder and managing member of Marutham Square LLC and Dandapani LLC and personally participated in and approved the transactions and communications giving rise to this action.

13.     Defendant MARUTHAM SQUARE LLC ("**Marutham**") is a Florida limited liability company formed on or about December 15, 2023, with a registered

office in Florida and principal business operations in Plano, Texas. Marutham Square was the primary investment vehicle through which Defendants solicited and received Plaintiff's $300,000 investment.

14.    Defendant DANDAPANI LLC ("**Dandapani**") is a Texas limited liability company formed on or about May 20, 2024, with its principal place of business in Plano, Texas. Dandapani was organized and controlled by Venkatesan and received Plaintiffs' additional $50,000 contribution, which Defendants fraudulently converted from a purported short-term loan into an equity interest

15.    Relief Defendant **KURINJI SQUARE LLC** is a Florida limited liability company owned and controlled by Defendants Venkatesan and Senthilvel. Kurinji Square LLC received and used Plaintiffs' investment funds to acquire the residential property located at 3050 Southeast 53rd Court, Ocala, Florida 34480, despite Plaintiffs never authorizing or agreeing to invest in Kurinji Square LLC. Kurinji is named as a Relief Defendant because it holds assets traceable to Plaintiffs' misappropriated funds and has no legitimate claim to those assets.

16.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa, because this action arises in part under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

17.    This Court has supplemental jurisdiction over Plaintiffs' related state law claims under 28 U.S.C. § 1367, including claims for fraud, breach of contract, and violation of the Florida Securities and Investor Protection Act, because such claims

arise from the same nucleus of operative facts and form part of the same case or controversy.

18.     Venue is proper in the Tampa Division of the Middle District of Florida under 28 U.S.C. § 1391(b) and 15 U.S.C. § 78aa, because a substantial part of the events and omissions giving rise to the claims occurred in this District, including investment solicitations, fund transfers, and communications directed to Plaintiffs while Kumar was located in Florida. One or more Defendants also reside and conduct business in this District.

19.     Personal jurisdiction exists over each Defendant and Relief Defendant because they (a) transacted business within the State of Florida; (b) committed tortious acts in or directed toward Florida; (c) purposefully availed themselves of the privileges and protections of Florida law; and (d) used Florida-based entities, bank accounts, and real property in furtherance of the wrongful acts alleged.

20.     In connection with the acts, misrepresentations, and omissions alleged herein, Defendants used the means and instrumentalities of interstate commerce, including but not limited to interstate wire transfers, electronic mail, text messaging, and telephone communications across state lines, in violation of the Securities Exchange Act.

## III.   FACTUAL ALLEGATIONS

### A.     Pre-Investment Meeting and Solicitation (December 2023)

21.     On or about December 2, 2023, Plaintiff Kumar met with Defendant Venkatesan in Wesley Chapel, Florida, to discuss potential real estate investment

opportunities. At this meeting. Venkatesan had proposed an investment opportunity to Kumar where Venkatesan would use Kumar's funds to purchase real estate, rehabilitate it, and rent it out.

22.    During this meeting, Venkatesan orally represented the following to Kumar for the purposes of inducing Kumar to invest his capital:

       a.  Kumar's investment would be used to purchase real estate and operate a rental investment business through an entity to be established by Venkatesan;

       b.  Kumar would be entitled to receive profits from the sale of the property if the property sold during Kumar's investment period;

       c.  Kumar would receive guaranteed monthly interest payments of 4.5% on his investment;

       d.  Kumar's funds would be available whenever needed, and Kumar could withdraw his investment by giving one to two months' notice; and

       e.  The investment was safe and would be secured by real property.

23.    In reasonable reliance on these oral representations and assurances by Venkatesan, Kumar agreed to invest $300,000.00 with Venkatesan.

24.    At the time he made these oral statements, Venkatesan failed to disclose material facts necessary to make his statements not misleading, including that:

       a.  He intended to divert a portion of Kumar's funds to a different entity, Kurinji Square LLC, in which Kumar had no ownership interest;

    b.   He intended to refinance the properties and extract equity, reducing liquidity;

    c.   Such refinancing would render Kumar's investment illiquid; or

    d.   He and his entities lacked liquid reserves to honor withdrawal requests.

**B.**    <u>**Formation and Initial Funding (December 2023)**</u>

25.    On December 15, 2023, Venkatesan formed Marutham Square LLC for the stated purpose of purchasing real estate using Kumar's investment funds, consistent with the oral representations made during the December 2, 2023 solicitation.

26.    That same day, and at Venkatesan's verbal and written direction, Kumar incorporated Anantha LLC to hold his investment interest in Marutham.

27.    In or around December 2023, Defendant Marutham entered into an agreement to purchase the residential property located <u>at 12450 Southeast 99th Avenue, Belleview, Florida 34420</u> (the "**Belleview Property**"). Venkatesan represented that this property would be acquired using Kumar's investment capital, but he did not disclose his intent to refinance the property or divert portions of Kumar's funds elsewhere.

28.    On December 20, 2023, Venkatesan sent Kumar a WhatsApp message stating that "the title company is asking for proof of funds," thereby pressuring Kumar to provide funds quickly despite the absence of any fully executed agreement or disclosure documents.

29.     On December 27, 2023, Venkatesan sent another WhatsApp message instructing Kumar to "use this LLC account to transfer your money," referring to Anantha LLC, which Venkatesan had directed Kumar to form. These instructions were part of a continued effort to obtain Kumar's funds before providing any written agreement reflecting the oral promises previously made.

30.     On December 28, 2023, Kumar messaged Venkatesan via WhatsApp: "we haven't signed an agreement on paper yet… I am at the bank waiting…," expressly noting the absence of any executed contract. Despite this, Venkatesan continued to pressure Kumar to wire funds, even though he had not provided the promised written agreement or disclosed material facts concerning his intended use of the funds.

31.     Relying on Venkatesan's oral assurances and under continued pressure, Kumar wired $100,000 to Marutham's business account on December 28, 2023. Venkatesan confirmed receipt by e-mail. (**Exhibit A**)

32.     On December 29, 2023, Kumar wired the remaining $200,000, completing the $300,000 investment. Venkatesan again confirmed receipt by e-mail. (**Exhibit A**) At no time prior to receiving the $300,000 did Venkatesan provide the written agreement he had promised or disclose the material information he omitted during the solicitation.

**C.     The Operating Agreement (January 2024)**

33.     On January 5, 2024, after Kumar had already transferred the full $300,000 investment, Anantha LLC and Marutham Square LLC executed a written

Operating Agreement (the "Marutham Agreement"). The Agreement was signed by Defendants Venkatesan and Senthilvel in their capacities as managers of Marutham. (**Exhibit B**). At no time prior to receiving the funds did Defendants provide this agreement or any written disclosures regarding the terms of the investment.

34.    Defendants Marutham Square LLC, Venkatesan and Senthivel made the following written representations in the Marutham Agreement:

    a.  "Anantha LLC has made the Capital Contributions of $300,000"

    b.  "Marutham Square LLC will pay 4.5% interest to Anantha LLC monthly (before the 10th of every month).

    c.  "Marutham Square LLC will distribute some of the capital gains from real estate to Anantha LLC"

    d.  "Mr. Venkatesan Dharmarajan will be involved in and manage all rental properties and (if any reconstruction, renovation, manage renters, any type of plumbing, electrical work, handling tenants, etc.) any cash flows."

35.    The written Agreement did not memorialize the oral liquidity promise made by Venkatesan in December 2023, an omission that Defendants never disclosed or explained before inducing Kumar's funding of the investment.

36.     On or around January 25, 2024, Marutham closed on the purchase of the Belleview Property. The recorded deed reflects a transfer date of December 22, 2023, yet the closing statement shows a closing date of January 21, 2024. (**Exhibit C - Belleview Deed, Exhibit D – Belleview Closing Statement**).

**D.**   **Diversion of Funds to Kurinji Square LLC (February 2024)**

37.   On February 6–7, 2024, Defendant Senthilvel urgently and repeatedly solicited Kumar via WhatsApp message to invest additional funds in the residential property located at 3050 Southeast 53rd Court, Ocala, Florida 34480 (the "**Ocala Property**"), sending messages such as:

- "We are buying this property Feb 9th";

- "Our price is $509k. The appraisal is $508 to $513";

- "Please transfer as much money as you can this week";

- "We can make [a] new agreement with [a] new LLC based on [your] investment"; and

- "Can we expect at least 50k before Friday."

- These messages were represented as a new investment opportunity requiring new capital.

38.   Kumar did not respond to these solicitations and did not authorize or agree to invest any additional funds toward the Ocala Property.

39.   On February 26, 2024, Defendant Venkatesan and Senthilvel acquired the Ocala Property through Kurinji Square LLC, an entity in which Plaintiffs have no ownership Interest. Venkatesan later admitted to Kumar that his funds were used to purchase the Ocala Property, without Kumar's knowledge or consent. (**Exhibit E - LLC Affidavit.**)

40.    Defendants' February 6–7 solicitation seeking new investment for a property they had already agreed to purchase using Kumar's existing funds demonstrates that:

    a.    Defendants knowingly misappropriated Kumar's funds for the Ocala Property;

    b.    Defendants attempted to conceal the diversion by soliciting new investment for the same property; and

    c.    Defendant Venkatesan's December 2023 representation that Kumar's funds would be used exclusively for Marutham properties was knowingly false when made.

41.    On February 26, 2024, the Ocala Property was purchased through Kurinji Square LLC, which is owned solely by Defendants Venkatesan and Senthilvel. Plaintiffs have no ownership or profit interest in Kurinji.

42.    The diversion of Kumar's funds to Kurinji Square LLC directly contradicted Venkatesan's explicit verbal and written representation in the Marutham Operating Agreement that Kumar's capital would be used to acquire properties for Marutham Square LLC.

43.    Kumar never authorized, never consented to, and had no knowledge of Defendants' diversion and misuse of his investment funds.

44.    On March 29, 2024, approximately 90 days after receiving Kumar's investment, Defendants caused Marutham to refinance the Belleview Property,

withdrawing approximately $187,000, representing more than 60% of Kumar's contributed capital. (**Exhibit F - Recorded Mortgage**.)

45.     After extracting $187,000 from the Belleview refinance and diverting approximately $130,000 to Kurinji, Defendants had no liquid assets available to honor their repeated representation that Kumar could withdraw his capital with 1–2 months' notice.

### E.     Sporadic Payment of Monthly Returns (April 2024 - January 2025)

46.     Under the Marutham Agreement, monthly interest payments that were due on or before the 10th of each month beginning April 2024.

47.     Defendants made sporadic and inconsistent payments:

| Month | Date | Amount | Status |
|---|---|---|---|
| **April 2024** | Not paid | $0 | **First payment due - not made** |
| **May 2024** | May 8 | $1,125 | Timely |
| **May 2024** | May 17 | $562.50 | Partial second payment |
| **June 2024** | June 26 | $1,125 | 16 days late |
| **July 2024** | July 8 | $1,125 | Timely |
| **August 2024** | Aug 7 | $1,125 | Timely |
| **September 2024** | Sept 13 | $1,125 | 3 days late |
| **October 2024** | Oct 4 | $1,125 | Timely |
| **November 2024** | Not paid as of 11/22 | $0 | 30+ days late |
| **December 2024** | Dec 10 | $2,250 | Double payment |
| **January 2025** | Jan 7 | $1,125 | Timely |
| **Feb 2025 forward** | **None** | **$0** | **All payments ceased** |
| **TOTAL PAID** | | **$11,687.50** | **Over ~11 months** |

48.     Defendants never made the April 2024 payment and ceased all payments after January 2025.

**F.**    **The $50,000 "Loan" Fraudulently Converted to Equity (July 2024)**

49.    On July 19, 2024, Venkatesan contacted Kumar by telephone and solicited a short-term bridge loan of $50,000. Venkatesan represented: (a) The loan would be for two to three months; (b) The loan would be repaid in full in November 2024 with interest; and (c) Venkatesan would pay 5% interest.

50.    On July 24, 2024, Kumar requested written loan documentation. Venkatesan agreed to provide it.

51.    On July 25, 2024, Kumar transferred $49,000 to Venkatesan in reliance on the loan representation (**Exhibit G – Statement**) and another $1,000 through another business transaction, totaling transfer of $50,000.

52.    On August 2, 2024, after repeated requests, Venkatesan provided draft of a document titled "Operating Agreement Between Dandapani LLC and Anantha LLC") (**Exhibit H; Dandapani Operating Agreement**). The document was not a loan agreement but rather an LLC Operating Agreement, which unilaterally and deceptively converted Kumar's $50,000 loan into an illiquid equity interest in Dandapani LLC.

53.    At the time Venkatesan solicited the $50,000 loan, he had no intention of repaying it and intended from the outset to convert it to equity. This conduct mirrors and reinforces the fraudulent scheme used with the Marutham investment.

**G.**    **Withdrawal Demands and Refusal to Return Capital (November 2024 - April 2025)**

54.    On November 19, 2024, eleven months after investing, Kumar provided written notice via WhatsApp message stating: "I have decided to take my investment out… I would like to talk about next steps." This notice complied with Defendants' oral representation requiring only 1–2 months' notice.

55.    Over the next several days, Kumar reiterated that he had received no return for the first three-and-a-half months after investing, that subsequent 4.5% payments were inconsistent, and that the November 10, 2024 payment remained unpaid as of November 22, 2024. In doing so, Kumar expressly referenced Defendants' prior promise that he could withdraw his funds with one to two months' notice.

56.    Despite receiving proper notice, Defendants made no arrangements to return Kumar's principal. Kumar continued to request withdrawal, including messages on January 31, 2025, and February 2, 2025, again reminding Defendants of their one-to-two-month notice representations.

57.    On March 23, 2025, after months of inaction, Kumar demanded transparency regarding Defendants' use of his $300,000 and $50,000 investments and requested an accounting of the properties Defendants claimed to have purchased.

58.    On April 3, 2025, Venkatesan responded evasively: *"Kumar, we gave all the information and options to you but you are keeping on calling. We don't have anything more. The ball is in your court." "Other option is wait for three months and review again."*

59.     On April 3-5, 2025, Venkatesan disclosed by WhatsApp Message how Kumar's $300,000 was allocated: (i) $170,000 was invested into the Belleview Property: ($80,000 "down payment" plus $90,000 "repairs") and (ii) $130,000 was invested into the Ocala Property that was purchased by Kurinji Square LLC, ($70,000 "down payment" plus $60,000 "repairs"). This admission confirmed that 43% ($130,000) of Kumar's investment was diverted to Kurinji Square LLC, an entity in which Plaintiffs have no ownership interest.

60.     Defendants then suggested Kumar could purchase one or both properties, effectively attempting to force Kumar to buy properties he had already funded.

61.     From November 19, 2024, to the filing of this Complaint, Defendants have refused to return Kumar's $350,000 despite Kumar's proper notice of withdrawal on November 19, 2024, passage of more than two months (Venkatesan's promised notice period); and, repeated demands on January 31, February 2, and March 23, 2025.

62.     Defendants have also ceased all monthly payments after January 2025.

63.     After April 5, 2025, Defendants ceased all substantive communication.

**H.     Material Misrepresentation**

64.     Defendants made three distinct categories of material misrepresentations to induce Plaintiffs' investment and retain Plaintiffs' funds: (1) the liquidity misrepresentation; (2) the exclusive use misrepresentation; and (3) the loan

misrepresentation. Each misrepresentation was material to Plaintiffs' investment decision and caused separate and distinct harm.

### 1) *First Material Misrepresentation: The Liquidity Promise*

65.     On December 2, 2023, during an in-person meeting in Wesley Chapel, Florida, Defendant Venkatesan made the following oral representation to induce Kumar's investment: Kumar could withdraw his entire $300,000 investment at any time with one to two months' notice.

66.     This representation was made specifically in response to Kumar's stated requirement that he needed access to his capital within one-year time frame. Kumar explicitly informed Venkatesan he would not invest without a liquidity guarantee. The liquidity promise was therefore a material inducement without which Kumar would not have invested.

67.     The liquidity representation was false because: (a) within 90 days of receiving Kumar's funds, Defendants refinanced the Belleview Property eliminating liquidity; (b) Defendants diverted $130,000 to Kurinji Square LLC; (c) Defendants maintained no reserves to honor withdrawal requests; and (d) when Kumar provided proper notice on November 19, 2024, Defendants refused to return any funds.

68.     Defendants knew the representation as false or made with reckless disregard for its truth or falsity because commercial refinancing requires 30-60 days of advance planning, showing Defendants intended to eliminate liquidity when making the promise.  Defendants' pattern of conduct, immediate refinancing, fund diversion, and refusal to honor withdrawals demonstrates intentional deception.

69.     On April 3, 2025, when Kumar renewed his withdrawal request, Venkatesan responded via WhatsApp: "Again they are not doing good now," explicitly tying the return of Kumar's capital to the financial performance of the properties, a direct contradiction of his December 2, 2023 unconditional promise that Kumar could withdraw "at any time" with "one to two months' notice"

70.     Kumar reasonably relied on this representation by liquidating his CD account and investing $300,000 with Venkatesan. By securing Kumar's investment, Defendants obtained immediate access to $300,000, which they used to refinance the Belleview Property and to fund the purchase and repair of the Ocala Property through Kurinji Square LLC, which is inconsistent with providing a liquid investment opportunity or maintaining reserves to honor a withdrawal request.

71.     Kumar's reliance was reasonable because the representation was made directly and specifically in response to his stated liquidity requirement, was presented as unconditional, and was made at a time when Defendants concealed their intent to refinance the Belleview Property, divert funds to Kurinji Square LLC, and eliminate all liquidity. As a result of Venkatesan's false statements, Kumar invested $300,000 that he otherwise would not have invested.

72.     As a direct and proximate result of Defendants' fraudulent conduct, Kumar's $300,000 became illiquid and unrecoverable, causing him loss of principal, loss of the use and value of his capital, and additional damages to be proven at trial.

### *2)  Second Material Misrepresentation: The Short-Term Loan*

73.    On or about July 19, 2024, during a telephone call, Defendant Venkatesan represented to Plaintiff Kumar that an additional $50,000 transfer would be a "short-term loan" that Defendants would repay in full within approximately two to three months with 5% interest.

74.    Venkatesan stated the funds were needed temporarily and assured Kumar that repayment would occur no later than October or early November 2024. This representation was false when made. Although Venkatesan described the transfer as a short-term loan, he never provided any loan documentation, promissory note, repayment terms, or written agreement of any kind. Instead, on August 2, 2024, after Kumar repeatedly asked for loan documents, Venkatesan provided a document titled "Operating Agreement between Anantha LLC and Dandapani LLC which was an operating agreement that converted Kumar's $50,000 into equity in Dandapani LLC. The document was not a loan contract and was wholly inconsistent with the two-to-three-month repayment promise. The funds were also delivered to Venkatesan's personal account.

75.    Defendants' subsequent conduct confirms that the representation was false when made. Venkatesan never repaid any portion of the $50,000, despite promising repayment by November 2024. Instead, he treated the funds as equity in Dandapani LLC, an entity in which Kumar had no expectation of participating. No loan payments were made, no repayment schedule existed, and the money was deposited into Venkatesan's personal account.

76.     Venkatesan made the short-term loan representation with the intent that Kumar rely on it to induce him to invest more money with Venkatesan. He knew Kumar would not have provided an additional $50,000 if Venkatesan disclosed he did not intend to return the funds with the time frame promised. Defendants' subsequent conversion of the money into equity confirms that the representation was made to obtain the funds under false pretenses.

77.     Kumar reasonably relied on Venkatesan's representation that the $50,000 would be a short-term loan and transferred the funds based on that assurance. Kumar would not have transferred the money had he been informed that Defendants intended to treat it as permanent capital or that they would provide no loan documentation, repayment terms, or promissory note.

78.     As a direct and proximate result of Venkatesan's misrepresentation, Kumar lost his $50,000 principal, lost the use and value of his capital, and suffered additional damages to be proven at trial.

### 3) *Third Material Misrepresentation: Use of Funds*

79.     On December 2, 2023, during an in-person meeting in Wesley Chapel, Florida, Defendants represented to Plaintiff Kumar that his $300,000 investment would be placed into Defendants' real-estate investment LLC and used to purchase multiple rental properties for that LLC, in which Kumar would receive rental income and share in profits from future sales. At that time, Defendants did not disclose the name of the LLC but assured Kumar that his funds would be used exclusively within their real-estate entity for property acquisitions in which he would have an ownership

interest. Defendants later reaffirmed this same representation in writing on January 5, 2024, when they executed the Marutham Square LLC Operating Agreement, which treated Kumar's entire $300,000 as capital contributed to Marutham and stated that Marutham would acquire and operate real estate using those funds. The Operating Agreement contained no disclosure that any portion of the funds would be diverted to Kurinji Square LLC or used for properties outside of Marutham.

80.     The representation that Kumar's $300,000 would be used exclusively for properties owned by Marutham Square LLC was false. Instead, Defendants diverted approximately $130,000 to fund the Ocala Property through Kurinji Square LLC, an entity in which Kumar held no ownership interest and which was never disclosed during the solicitation of the investment. The diversion occurred within approximately sixty days of Kumar's contribution and was inconsistent with the exclusive-use representation made during the December 2, 2023 meeting and reaffirmed in the January 5, 2024 Operating Agreement.

81.     Defendants' misrepresentation is further demonstrated by their conduct in early February 2024. Although Defendants had already contracted to purchase the Ocala Property, they urgently solicited Kumar on February 6–7, 2024 for an additional $50,000 to close on that property. Kumar expressly declined to invest further. Despite his refusal, Defendants proceeded to divert $130,000 of Kumar's investment from Marutham to Kurinji Square for the purchase of the Ocala Property.  The use of Kumar's capital for a property he had declined to fund is directly contrary to Defendants' exclusive-use representation.

82.    Defendants reaffirmed the false exclusive-use representation in the January 5, 2024 Operating Agreement, which treated Kumar's entire $300,000 as capital contributed to Marutham Square LLC and contained no disclosure that nearly half of those funds had been or would be diverted to Kurinji Square LLC. By presenting an operating agreement that identified all $300,000 as Marutham capital, Defendants concealed their planned use of the funds for the Ocala Property.

83.    Defendants knew, or acted with reckless disregard for the truth, that their representations concerning the exclusive use of Kumar's capital were false. Their knowledge and intent are supported by the following circumstantial evidence: the diversion of approximately $130,000 to Kurinji Square LLC; Defendants' solicitation of additional funds for the Ocala Property despite being already under contract to purchase it and knowing they lacked the liquidity to close; Kumar's express refusal to contribute more funds; Defendants' subsequent use of Kumar's original capital to close the transaction; their execution of an operating agreement omitting any reference to this diversion; their rapid refinance of the Belleview Property removing most of Kumar's remaining capital; and their refusal to return any portion of Kumar's funds despite repeated demands. Taken together, these facts show a strong inference that the exclusive-use representation was knowingly false or made with reckless disregard for the truth.

84.    Defendants concealed their diversion of Kumar's funds to Kurinji Square LLC for more than a year. Only after Kumar requested full transparency on April 3, 2025, asking, "Can u be transparent and tell me how you invested my $300k??", did

Defendants disclose that approximately $130,000 of his investment had been allocated to the Ocala Property.

85.     The fact that Defendants sought additional funds in February 2024 to close on the Ocala Property, after Kumar expressly declined, and then used his original Marutham investment to fund that same property demonstrates that Defendants misappropriated Kumar's capital and concealed their actions to prevent detection.

86.     Defendants made these representations to induce Kumar to invest $300,000 by creating the false impression that his capital would be used solely for Marutham Square LLC properties in which he would obtain an ownership interest and share in income and profits.

87.     Kumar reasonably relied on Defendants' oral and written representations and transferred $300,000 in reliance on those assurances. Kumar would not have invested had he known that Defendants intended to or would divert a substantial portion of his capital to an undisclosed entity or use his funds for a property he expressly declined to invest in.

88.     As a direct and proximate result of Defendants' misrepresentations, Kumar lost the benefit of his $300,000 investment, including the loss of ownership rights in the $130,000 diverted to Kurinji Square LLC and the loss of income and profits from the Ocala Property, which he unknowingly funded but in which he held no ownership interest.

89.     Defendants' diversion of approximately $130,000 of Kumar's investment to Kurinji Square LLC constituted unauthorized dominion and control over his funds.

By allocating nearly half of Kumar's capital to an undisclosed entity in which he had no rights or ownership, Defendants used Kumar's property for their own benefit and in a manner directly contrary to the exclusive-use representation made during solicitation and reaffirmed in the Operating Agreement.

90.    Plaintiff Kumar, individually and through Anantha LLC, has fulfilled all conditions precedent, made demand for payment, and Defendants have refused or failed to comply. All other conditions precedent to maintaining this action have otherwise occurred, been performed, or are excused, waived, or futile.

<u>COUNT I</u>
**Fraud in the Inducement**
**(Against All Defendants)**

91.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 90 as if fully set forth herein.

92.    As alleged above, Defendants, Defendants made false statements and material omissions concerning the nature, terms, use of funds, and risks of the investment in order to induce Plaintiffs to transfer funds.

93.    Defendants knew these statements were false when made, or made them with reckless disregard for the truth, and intended that Plaintiffs rely upon them. Defendants made these misrepresentations for the purpose of inducing Plaintiffs to invest funds and to obtain control over Plaintiffs' capital.

94.    Plaintiffs reasonably relied on Defendants' misrepresentations and omissions when deciding to invest and transfer funds. Plaintiff relied on Defendants' verbal assurances, their representations regarding liquidity, their claimed investment

experience, their written confirmations, the Operating Agreement, and the guaranteed monthly payments, all of which falsely created the appearance of legitimacy.

95.     But for Defendants' fraudulent inducements, Plaintiff would not have invested their funds with the Defendants.

96.     As a direct and proximate result of Defendants' fraud in the inducement, Plaintiff suffered damages including, but not limited to, loss of principal, loss of the use and value of their capital, loss of ownership rights in properties funded with their funds, and additional damages to be proven at trial.

**WHEREFORE**, Plaintiffs demand judgment against all Defendants for rescission, compensatory damages, prejudgment interest, attorneys' fees where authorized, costs, and such other and further relief as the Court deems just and proper.

<u>**COUNT II**</u>
<u>**Violation of Section 10(B) of The Securities Exchange Act of 1934**</u>
<u>**(Against Venkatesan, Senthilvel, Marutham Square LLC, and Dandapani LLC)**</u>

97.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 90 as if fully set forth herein.

98.     Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, make it unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, (a) to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made not misleading; or (c) to engage in

any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

99.    The investment interests sold to Plaintiffs constitute "securities" within the meaning of Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act because: (a) Plaintiffs invested money; (b) in a common enterprise with Defendants; (c) with the expectation of profits; (d) derived solely from the entrepreneurial and managerial efforts of Defendants, who retained exclusive control over all aspects of the investment including property selection, acquisition, management, refinancing, and disposition decisions. See SEC v. W.J. Howey Co., 328 U.S. 293 (1946).

100.    As alleged above, in connection with the offer and sale of securities to Plaintiffs, Defendants, directly and indirectly and by use of the means and instrumentalities of interstate commerce, made untrue statements of material fact and omitted material facts necessary to make the statements made not misleading.

101.    Defendants employed devices, schemes, and artifices to defraud Plaintiffs, and engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Plaintiffs.

102.    Defendants made false statements of material fact and omitted material facts, including but not limited to statements concerning the liquidity of Plaintiffs' investment, the intended use of Plaintiffs' funds, the nature of the $50,000 loan, and Plaintiffs' ownership and rights in the investment entities.

103.    As alleged above, Defendants made these misrepresentations and omissions knowingly, intentionally, or with severe recklessness in conscious disregard of a substantial risk that their statements were misleading.

104.    Plaintiffs     reasonably     relied     upon     Defendants'     material misrepresentations and omissions in deciding to invest and transfer funds.

105.    As a direct and proximate result of Defendants' violations of Section 10(b) and Rule 10b-5, Plaintiffs suffered economic loss and other damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants Venkatesan, Senthilvel, Marutham Square LLC, and Dandapani LLC for rescission, compensatory damages, prejudgment interest, attorneys' fees where authorized, costs, and all other relief the Court deems just and proper.

## COUNT III
### Violation of the Florida Securities and Investor Protection Act, Fla. Stat. § 517.301
### (Against All Defendants)

106.    Plaintiffs reallege and incorporate by reference 1 through 89 as though fully set forth herein.

107.    As alleged above, Defendants, individually and through Marutham Square LLC and Dandapani LLC, offered and sold securities to Plaintiffs within the State of Florida, including membership interests, investment contracts, and equity interests that qualify as "securities" under Fla. Stat. § 517.021(22).

108.    In connection with the offer, sale, and purchase of these securities, Defendants, directly and indirectly: (a) employed devices, schemes, or artifices to

defraud; (b) obtained money or property by means of untrue statements of material fact or omissions of material fact necessary to make the statements made not misleading; and (c) engaged in transactions, practices, and a course of business which operated as a fraud or deceit, all in violation of Fla. Stat. § 517.301(1)(a)(1)–(3).

109.    Defendants' misrepresentations and omissions included, but were not limited to, false statements concerning the liquidity of Plaintiffs' investment, the intended use of Plaintiffs' funds, the safety and structure of the investment, Plaintiffs' ownership interests, and the nature and terms of the July 2024 $50,000 transfer.

110.    Defendants made these misrepresentations and omissions knowingly, intentionally, or at minimum with negligence or reckless disregard for the truth, which is sufficient for liability under Fla. Stat. § 517.301.

111.    Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions in deciding to invest $300,000 in December 2023 and $50,000 in July 2024.

112.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages including loss of principal, loss of the use and value of their funds, loss of ownership and profit rights, and additional damages to be proven at trial.

113.    Plaintiffs are entitled to rescission, restitution, or damages under Fla. Stat. § 517.211, together with interest, attorneys' fees, and costs as provided by law.

**WHEREFORE**, Plaintiffs demand judgment against all Defendants under Fla. Stat. § 517.301 and § 517.211 for rescission, compensatory damages, statutory

damages, prejudgment interest, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT IV
### Civil Theft
### (Against All Defendants)

114.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 89 as if fully set forth herein.

115.    As alleged above, Defendants knowingly obtained and used, and endeavored to obtain and use, Plaintiffs' property with criminal intent, either temporarily or permanently, to deprive the Plaintiffs of a right to the property or a benefit therefrom, or, alternatively, to appropriate Plaintiffs' property to Defendants' own use, in violation of Fla. Stat. § 812.014(1).

116.    Defendants' conduct constitutes theft within the meaning of Fla. Stat. § 812.014, because Defendants intentionally diverted Plaintiffs' funds for undisclosed purposes, used those funds for entities in which Plaintiffs had no interest, refused to return Plaintiffs' capital after demand, and converted the July 2024 transfer into capital for Dandapani LLC without Plaintiffs' knowledge or consent.

117.    Defendants acted knowingly and with criminal intent, as demonstrated by their diversion of funds to Kurinji Square LLC, their extraction of equity from the Belleview Property, their misappropriation of Plaintiffs' investment capital, their refusal to honor the liquidity rights they promised, and their refusal to return Plaintiffs' funds upon repeated demand.

118.    Plaintiffs have provided Defendants with written notice complying with the requirements of Fla. Stat. § 772.11, or such notice is excused because Defendants' acts constitute theft for which demand would be futile and Defendants have already demonstrated their refusal to return the property. On or about June 23, 2025, Plaintiffs served Defendants with written demand in compliance with Fla. Stat. § 772.11. More than thirty days have elapsed since that demand, and Defendants have failed to comply.

119.    As a direct and proximate result of Defendants' civil theft, Plaintiffs have suffered damages including loss of their $350,000 in principal, loss of use of their funds, and other damages to be proven at trial.

120.    Pursuant to Fla. Stat. § 772.11, Plaintiffs are entitled to treble damages, attorneys' fees, and costs.

**WHEREFORE,** Plaintiffs demand judgment against all Defendants for treble damages under Fla. Stat. § 772.11, compensatory damages, prejudgment interest, attorneys' fees, costs, and all such other relief as the Court deems just and proper.

### COUNT V
### Conversion
### (Against All Defendants)

121.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 90 as if fully set forth herein.

122.    As alleged above, Plaintiffs had an immediate and unequivocal ownership interest in the $300,000 transferred in December 2023 and the $50,000

transferred in July 2024, as well as a right to possess, control, and recover those funds upon demand.

123.    Defendants wrongfully exercised dominion and control over Plaintiffs' property by diverting Plaintiffs' funds to undisclosed entities, including Kurinji Square LLC; by converting the July 2024 transfer into capital for Dandapani LLC without Plaintiffs' knowledge or consent; by refinancing the Belleview Property to strip equity funded by Plaintiffs; and by refusing to return Plaintiffs' capital upon proper demand.

124.    Defendants' conduct was inconsistent with Plaintiffs' ownership rights and constituted a wrongful and unauthorized assumption of ownership, control, and use of Plaintiffs' property.

125.    Plaintiffs demanded the return of their funds beginning in November 2024 and repeatedly thereafter, but Defendants failed and refused to return any portion of Plaintiffs' $350,000.

126.    As a direct and proximate result of Defendants' conversion, Plaintiffs suffered damages, including loss of their principal, loss of the use and value of their funds, and additional damages to be proven at trial.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against all Defendants, jointly and severally, and award compensatory damages, prejudgment interest, costs, and such other relief as the Court deems just and proper.

## COUNT VI
### Breach of Contract
### (Against Venkatesan Dharmarajan Only)

127.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 90 as if fully set forth herein.

128.    As alleged above, Plaintiffs and Defendant Venkatesan entered into a valid and enforceable oral contract on December 2, 2023, in that agreement, Venkatesan personally promised, among other things, that:

    a.  Kumar's $300,000 investment would be used to purchase real estate for Marutham Square LLC;

    b.  Kumar would receive guaranteed monthly payments;

    c.  the investment would be safe and secured by real property; and

    d.  Kumar could withdraw his investment at any time upon one to two months' notice.

129.    Plaintiffs fully performed under this oral agreement by transferring $300,000 to Marutham.

130.    Venkatesan materially breached this oral contract by failing to make the required monthly payments, diverting Kumar's funds to an undisclosed entity, eliminating liquidity through refinancing, refusing to return Kumar's capital after proper notice, and otherwise failing to honor the terms he personally guaranteed.

131.    Separately, on or about July 19, 2024, Plaintiff Kumar and Defendant Venkatesan entered into a second valid and enforceable oral contract, in which

Venkatesan personally represented that Kumar's transfer of $50,000 would be a short-term loan for approximately two to three months, to be repaid in full with 5% interest.

132.    Plaintiffs performed under this second contract by transferring $50,000.

133.    Venkatesan materially breached this contract by failing to provide any loan documentation, converting the loan into equity without consent, refusing to repay any portion of the loan, and continuing to withhold Plaintiffs' funds after repeated demand.

134.    As a direct and proximate result of Venkatesan's breaches of these oral contracts, Plaintiffs suffered damages including loss of their $300,000 investment, loss of their $50,000 loan principal, loss of monthly payments, loss of use and value of their capital, and additional damages to be proven at trial.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment against Defendant Venkatesan Dharmarajan for all available damages for breach of contract, prejudgment interest, attorneys' fees where authorized, costs, and all further relief the Court deems just and proper.

## COUNT VII
### UNJUST ENRICHMENT
### (Against All Defendants — Pled in the Alternative)

135.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 90 as if fully set forth herein. This claim is pled in the alternative to Plaintiffs' breach of contract claims.

136.   As alleged above, Plaintiffs conferred substantial benefits upon Defendants by transferring $300,000 in December 2023 and $50,000 in July 2024, which Defendants accepted, used, and exercised dominion over.

137.   Defendants knowingly retained, diverted, and benefitted from Plaintiffs' funds, including by using Plaintiffs' capital to acquire and improve properties in entities in which Plaintiffs held no ownership interest, extracting equity for Defendants' own benefit, converting the $50,000 transfer into equity without consent, and refusing to return any portion of Plaintiffs' capital after demand.

138.   Defendants' retention and use of Plaintiffs' funds, without repayment and without conferring the ownership, profit, or contractual rights represented to Plaintiffs, is inequitable, unjust, and contrary to good conscience.

139.   Plaintiffs have demanded the return of their funds, and Defendants have failed and refused to return any portion of Plaintiffs' property.

140.   As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs suffered damages including loss of their $350,000 in principal, loss of use and value of their capital, and other damages to be proven at trial.

141.   To allow Defendants to retain these benefits without payment would result in an unjust enrichment, and equity requires that Defendants disgorge the amounts wrongfully obtained and retained.

**WHEREFORE**, Plaintiffs demand judgment against all Defendants for restitution, disgorgement, prejudgment interest, costs, and such other and further equitable relief as the Court deems just and proper.

## COUNT VIII
### Imposition of Constructive Trust
### (Against All Defendants)

142.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 90 as if fully set forth herein.

143.    As alleged above, Defendants and Relief Defendant Kurinji Square LLC received, diverted, and retained Plaintiffs' funds, including the $300,000 transferred in December 2023 and the $50,010 transferred in July 2024, and used those funds to acquire, improve, refinance, or benefit properties and assets held in the names of Marutham Square LLC, Dandapani LLC, and Kurinji Square LLC.

144.    Defendants obtained Plaintiffs' funds through fraud, misrepresentation, conversion, civil theft, and other wrongful conduct, and thereafter refused to return Plaintiffs' property upon demand. Relief Defendant Kurinji Square LLC received and holds assets traceable to Plaintiffs' misappropriated funds and has no legitimate claim to those assets.

145.    Plaintiffs' funds are directly traceable into assets and property now held by Defendants and Relief Defendant, including but not limited to:

  a. the residential property located at 12450 Southeast 99th Avenue, Belleview, Florida 34420;

  b. the residential property located at 3050 Southeast 53rd Court, Ocala, Florida 34480;

  c. any equity or proceeds derived from refinancing;

  d. improvements made using Plaintiffs' funds; and

e. any rental income, profits, or appreciation derived from such properties.

146. Equity and good conscience require that Defendants and Relief Defendant not retain the benefits obtained with Plaintiffs' funds, and Defendants and Relief Defendant should be deemed to hold such assets, proceeds, equity, income, and profits in trust for Plaintiffs.

147. Plaintiffs have no adequate remedy at law to recover the specific assets and property interests into which their funds were wrongfully diverted, rendering the imposition of a constructive trust necessary and appropriate.

**WHEREFORE**, Plaintiffs respectfully request that the Court: (a) Impose a constructive trust over all properties, assets, equity, proceeds, rental income, appreciation, and benefits acquired, improved, refinanced, or held using Plaintiffs' funds, including but not limited to the Belleview Property, the Ocala Property, refinance proceeds, and all traceable assets; (b) order Defendants and Relief Defendant to disgorge and transfer to Plaintiffs all assets and benefits wrongfully obtained; (c) order a full accounting of all funds received from Plaintiffs and all assets or proceeds traceable thereto; (d) impose an equitable lien as necessary to secure Plaintiffs' interest; and (e) Grant all other equitable relief the Court deems just and proper.

### Prayer for Relief

**WHEREFORE**, Plaintiffs, Kumar Annamraju and Anantha LLC respectfully request this Honorable Court enter judgment for all claims for relief asserted in its Complaint in the amount to be proven at trial, including damages, reasonable

attorney's fees, costs of this action, pre-and post-judgment interest, and other such relief that the Court finds appropriate and just.

**Demand for Jury Trial**

Plaintiffs hereby make a demand for a jury trial on all issues so triable in this case.

Dated this 16ᵗʰ day of December 2025.

Respectfully submitted,

*s/ Brian Calciano*

BRIAN CALCIANO
Florida Bar No. 108879
*Trial Counsel for Plaintiffs*

**CALCIANO PIERRO, PLLC**
146 Second Street North – Suite 304
St. Petersburg, Florida 33701
(727) 217-5400
brian@flemploymentlaw.com

and

Kalpesh J. Patel
Attorney for Plaintiff
Florida Bar No. 121107
FL Patel Law PLLC
360 Central Avenue, Suite 800
St. Petersburg Florida 33701
727-279-5037
kalpesh@flpatellaw.com